IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

CARVET CARLYLE,

    Plaintiff,

    v.                      CIVIL NO.: WDQ-13-2964

THE TRAVELERS HOME AND MARINE
INSURANCE COMPANY,

    Defendant.

MEMORANDUM OPINION

    Carvet Carlyle sued The Travelers Home and Marine Insurance Company ("Travelers") for breach of contract in the Circuit Court for Baltimore City. ECF No. 2. Travelers removed to this Court. ECF No. 1. Pending are Carlyle's motion for leave to file an amended complaint, ECF No. 30, and Travelers's motions to dismiss and to file a surreply, ECF Nos. 22, 33. No hearing is necessary. Local Rule 105.6 (D. Md. 2011). For the following reasons, the motion to dismiss will be denied as moot, and the remaining motions will be granted.

I.   Background[1]

Since August 11, 1999, Carlyle[2] has owned a home at 4124 Marx Avenue in Baltimore, Maryland (the "Baltimore home"). ECF No. 30-2 ¶ 4. Beginning in 2005, Carlyle "had a tenant living at" the Baltimore home who paid her rent. Id. ¶ 7. On September 25, 2009, Carlyle purchased a homeowner's insurance policy from Travelers for the period of September 25, 2009 through September 25, 2011 (the "Policy"). Id. ¶ 5. Carlyle paid all the premiums due under the Policy. Id. ¶ 6.

In February 2010, Baltimore "experienced a massive, and largely unprecedented, winter snowstorm that deposited between 2 and 3 feet of snow." Id. ¶ 8. During and after the storm, the Baltimore home sustained damage to the "roof, siding, water pipes, ceilings, walls, floors, fixtures, and personal items" because of the "extreme weather conditions." Id. ¶¶ 9-10. During the same month, someone also broke into the Baltimore home, stole Carlyle's personal property, and caused more damage to the home. Id. ¶ 11.

---

[1] The facts are from the proposed third amended complaint. ECF No. 30-2. When a party seeks dismissal for lack of subject matter jurisdiction, the court may look "beyond the pleadings" to the submitted evidence to determine if jurisdiction exists. *Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003) *aff'd*, 85 F. App'x 960 (4th Cir. 2004).

[2] Carlyle suffers from a disabling medical condition that causes her to have occasional seizures and require assistance from a full-time caregiver. ECF No. 30-2 ¶ 60.

2

On March 1, 2010, Carlyle reported the property damage and theft to Travelers. *Id.* ¶ 13. Travelers assigned three claim numbers to Carlyle's report--one to the damaged water pipes; one to the damaged roof and siding; and one to the burglary. *Id.* ¶¶ 14-16. Each claim had a deductible of $1,000. *See id.* ¶¶ 36, 42. Because the snowstorm damage claims "arose out of the same occurrence"--and should have been considered one claim--Travelers improperly obtained two deductibles from Carlyle for snowstorm-related loss. *See id.* ¶ 36.

Travelers inspected the Baltimore home and initially concluded that the pipe leaks were unrelated to the snowstorm. *Id.* ¶ 17. However, Travelers later issued to Carlyle a payment of $2,365.89[3] for replacing the pipes; an amount far less than Carlyle's multiple third-party estimates of the actual cost of replacing the pipes. *Id.* ¶¶ 18-20. "Travelers knew or should have known that no contractor would undertake the repairs for the estimated cost of repair." *Id.* ¶ 21.

Because Travelers and Carlyle continued to dispute whether other water damage caused by the damaged pipes resulted from the snowstorm, Carlyle "was forced to obtain an independent plumber." *Id.* ¶¶ 22-23. The plumber concluded that water damage to the basement and other parts of the Baltimore home was

---

[3] Travelers estimated the cost of replacement to be $3,558.37, from which it subtracted $192.48 in recoverable depreciation and the $1,000 deductible. ECF No. 30-2 ¶ 18.

attributable to the snowstorm. Id. ¶ 23. This new information prompted Travelers to re-inspect the home. Id. ¶ 24. Although Travelers then recognized that the additional water damage was caused by the snowstorm, it did not increase its payment to Carlyle. Id. ¶¶ 24-25. Instead, Travelers assigned its Special Investigations Unit ("SIU") to extensively investigate Carlyle's "personal affairs to determine whether any exclusion under the terms of the Policy might apply." Id. ¶ 25. The SIU investigation requested "extensive and unreasonable amounts of documentation" from Carlyle, including, inter alia, her income tax returns, proof of her income, and disclosure of her bank accounts and creditors. Id. ¶ 51. During the investigation, Travelers also made "offensive and unsubstantiated . . . accusations" about Carlyle, including that she "neglected her property and allowed squatters to reside in her home." Id. ¶ 52.

As a result of the delayed repairs to the water damage caused by Travelers's "continued reluctance to provide adequate compensation," mold developed in the Baltimore home. Id. ¶ 32. Although Carlyle reported the "resultant mold growth"--which was covered by the Policy--to Travelers, it did not increase payment to Carlyle and instead assigned the SIU to determine if an exclusion applied. Id. ¶¶ 33-35. Since March 2010, because of the mold growth, the Baltimore home has been unhabitable,

forcing Carlyle to lose rental income from her tenant and to move elsewhere and pay monthly rent. *See id.* ¶¶ 58-59.

Travelers also issued a payment to Carlyle of $3,122.02[4] for the damage to the siding and roof. *Id.* ¶ 26. Carlyle contested Travelers's valuation of the damage, and Travelers issued an additional payment of $1,107.74. *Id.* ¶ 27. Even including this second payment, Travelers's repair estimate was far less than Carlyle's multiple third-party estimates of the cost of repairing the damage to the home. *See id.* ¶¶ 28-29. "Travelers knew or should have known" that Carlyle would not be able to obtain the needed repairs for Travelers's estimated cost of repair. *Id.* ¶ 30.

On March 5, 2010, Carlyle filed a police report about the stolen property. *Id.* ¶ 39. Although Carlyle provided Travelers "numerous photos, lists and receipts to substantiate the loss," Travelers claimed that she had not sufficiently documented her loss. *See id.* ¶¶ 40-41. Travelers eventually issued Carlyle a payment of $2,236.67 for the missing items and $1,397.20[5] for damage caused by the break-in. *Id.* ¶ 42. These payments again were far less than the amount of actual damage and loss, and

---

[4] Travelers estimated the cost of replacement to be $4,958.28, from which it subtracted $836.26 in recoverable depreciation and the $1,000 deductible. ECF No. 30-2 ¶ 18.

[5] Travelers estimated the cost of repair to be $2,397.20, from which it subtracted the $1,000 deductible. ECF No. 30-2 ¶ 42.

Carlyle was unable to find a contractor willing to fix the property damage for Travelers's estimated cost of repair. *See id.* ¶¶ 43-45. Travelers knew or should have known that these payments were insufficient. *Id.* ¶¶ 46-47.

On May 21, 2012, Travelers issued a final determination letter for Carlyle's snowstorm-related damage claims, which "refused to indemnify [Carlyle] to the full extent of her damages." *Id.* ¶ 54. On November 14, 2012, Carlyle submitted a complaint to the Maryland Insurance Administration ("MIA"), asserting that Travelers had improperly denied coverage.[6] ECF No. 33-2 at 1. On December 4, 2012, Travelers issued a second final determination letter, which "denied full coverage for the February burglary." ECF No. 30-2 ¶ 55.

On February 5, 2013, Carlyle, *pro se*, sued Travelers and others[7] in the Circuit Court for Baltimore City. ECF No. 2. On April 26, 2013, in response to Travelers's motion for a more definite statement, Carlyle filed an amended complaint. ECF Nos. 6, 7. On August 7, 2013, the MIA issued a final determination letter concluding that "Travelers has not violated

---

[6] The complaint to the MIA addressed all three claims. ECF No. 33-2 at 1.

[7] Travelers is the only remaining defendant; the other defendants were dismissed before the case was removed to this Court. ECF No. 24 at 1.

Maryland insurance law in its handling of [Carlyle's] claims." ECF No. 33-2 at 1.

On September 19, 2013, Carlyle--through counsel--filed a second amended complaint alleging breach of contract (Count One) and torts arising from breach of contract (Count Two).[8] ECF No. 18. On October 8, 2013, Travelers removed to this Court on the basis of diversity jurisdiction[9] and answered the complaint. ECF Nos. 1, 21.

On November 13, 2013, Carlyle moved for leave to file a third amended complaint. ECF No. 30. The proposed amended complaint deletes Count Two and supplements Count One with a claim for attorneys' fees for Travelers's alleged failure to act in good faith in denying insurance coverage under Md. Code Ann., Cts. & Jud. Proc. § 3-1701(e)(2) (West 2007). *See* ECF No. 30-2 at 9-13. On November 18, 2013, Travelers opposed the motion. ECF No. 31. On December 3, 2013, Carlyle replied. ECF No. 32. On December 11, 2013, Travelers moved unopposed for leave to file a surreply. ECF No. 33.

---

[8] On October 8, 2013, Travelers moved to dismiss Count Two for failure to state a claim. ECF No. 22. Carlyle consented to the dismissal and has deleted Count Two in her proposed third amended complaint. ECF No. 28 at 1. Because the Court will grant Carlyle leave to file the third amended complaint, *see infra* Section II.B, the motion to dismiss will be denied as moot.

[9] *See* 28 U.S.C. § 1332(a).

II.  Analysis

   A. Surreply

   Unless otherwise ordered by the Court, a party may not file a surreply. Local Rule 105.2(a) (D. Md. 2011). "Surreplies may be permitted when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply." *Khoury*, 268 F. Supp. 2d at 605. Because Travelers's proposed surreply is responsive to an argument that Carlyle raised for the first time in her reply, the Court will grant the motion. *See id.*; ECF Nos. 32, 33-1.

   B. Motion for Leave to Amend

   A party may amend a pleading more than 21 days[10] after a responsive pleading has been served only with the opposing party's consent or leave of court. Fed. R. Civ. P. 15(a).[11] Federal Rule of Civil Procedure 15(a)(2) instructs that leave to amend should be freely given when justice requires. Leave should be denied only when amendment would unduly prejudice the opposing party, amount to futility, or reward the movant's bad

---

[10] Carlyle moved for leave to amend 36 days after Travelers filed its motion to dismiss. ECF Nos. 22, 30.

[11] Travelers faults Carlyle for failing to seek its consent to the amendment. ECF No. 31 at 4. However, Rule 15(a)(2) allows amendments with "leave of court," even if the party seeking to amend does not obtain the opposing party's consent.

faith.[12]  *Steinburg v. Chesterfield Cnty. Planning Comm'n*, 527 F.3d 377, 390 (4th Cir. 2008); *Equal Rights Ctr. v. Niles Bolton Associates*, 602 F.3d 597, 603 (4th Cir. 2010).

Travelers argues that Carlyle's proposed amendment is futile, because she has failed to exhaust her attorneys' fees claim by first filing it with the MIA. ECF No. 31. Carlyle contends that the amendment is not futile, because she submitted her claim to the MIA and received a final determination. ECF No. 32 at 4. An amendment is futile if it would fail to withstand a motion to dismiss. *See Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995).

A motion to dismiss for failure to exhaust administrative remedies challenges the Court's subject matter jurisdiction. *See Clarke v. DynCorp Int'l LLC*, 962 F. Supp. 2d 781, 786 (D. Md. 2013). Under Federal Rules of Civil Procedure 12(b)(1) and 12(h), the Court must dismiss an action if it discovers it lacks subject matter jurisdiction. The plaintiff has the burden of proving the Court has jurisdiction, and the Court must make all reasonable inferences in the plaintiff's favor. *Khoury*, 268 F. Supp. 2d at 606. The Court may examine evidence "beyond the pleadings" to decide whether it has subject matter jurisdiction, without converting the proceeding to one for summary judgment,

---

[12] Travelers does not argue that Carlyle's amendment would prejudice it, or that she seeks leave to amend in bad faith.

but it must presume that the factual allegations in the complaint are true. *See id.; Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999).

Section 3-1701 authorizes recovery from insurers of, *inter alia*, actual damages and "[e]xpenses and litigation costs . . . including reasonable attorney's fees" if an insured prevails on a claim of improper denial of coverage, and the "insurer failed to act in good faith" in declining payment. *See* § 3-1701(a)(4), (e); *Thompson v. State Farm Mut. Auto. Ins. Co.*, 196 Md. App. 235, 238, 9 A.3d 112, 114 (2010). To bring an action under this statute, the insured must comply with the exhaustion provisions of Md. Code Ann., Ins. § 27-1001 (West 2007).[13] Section 27-1001(d)(1) states that a "complaint stating a cause of action under § 3-1701 of the Courts Article shall first be filed with the MIA." The complaint must "specify the applicable insurance coverage[,] the amount of the claim under the applicable coverage[,] the amount of actual damages, and the claim[ed] expenses and litigation costs." § 27-1001(d)(2).

To demonstrate that she has exhausted her claims before the MIA, Carlyle has attached to her reply the first page of the MIA's final determination letter denying her claims against Travelers, which was issued before she sought leave to amend.

---

[13] Section 27-1001 "applies only to actions under § 3-1701." § 27-1001(b).

*See* ECF No. 32 at 1. Travelers has attached to its surreply the full 10-page letter.[14] ECF No. 33-2. Travelers contends that the letter "constitutes the MIA's decision regarding its review of Travelers' claims handling practices under § 27-303 of the Insurance [Article] not § 27-1001." ECF No. 33-1 at 2. Accordingly, Travelers argues that Carlyle did not exhaust her claim, because she did not file a "complaint alleging failure to act in good faith" under § 27-1001. *See* ECF No. 33-1 at 2.

Travelers's contention lacks merit.[15] After reviewing the relevant Policy provisions and the background of the case in great detail, the letter states that the MIA "focused its

---

[14] In its motion to file a surreply, Travelers contends--without citation or elaboration--"that this [letter] should not be considered by this Court, because it is hearsay." ECF No. 33 at 2. However, in determining whether a cause of action should be dismissed for lack of subject matter jurisdiction--and accordingly whether an amendment adding such a cause of action is futile--the Court may examine evidence "beyond the pleadings." *See Khoury*, 268 F. Supp. 2d at 606. Accordingly, the Court will consider the full 10-page letter in evaluating Travelers's claim that the Court lacks jurisdiction over Carlyle's attorneys' fees claim.

[15] Travelers has not cited--nor has the Court found--any authority to support its argument that, to exhaust a claim under § 27-1001, the insured must have presented the exact same claims to the MIA that she presents to the Court. *See* ECF No. 33-1 at 2. To exhaust her claim, § 27-1001 merely requires the insured to file a complaint before the MIA that describes the insurance coverage and the amounts of the claim and damages. *See* § 27-1001(d)(2); *Fakhoury v. Great N. Ins. Co.*, CIV. WDQ-12-0268, 2012 WL 1554487, at *3-*4 (D. Md. Apr. 30, 2012) ("[Sections] 3-1701 and 27-1001 do not explicitly require that an insured contest in the administrative complaint all grounds on which the denial was based.").

review" on § 4-113[16] ("denials, refusals to renew, suspensions, and revocations") and § 27-303[17] ("unfair claim settlement practices") of the Maryland Insurance Article. ECF No. 33-2 at 9. Although the letter only specifically cites sub-sections (1), (2), and (6) of § 27-303--which do not discuss the good faith requirement--the letter expressly states that "Travelers' actions have not been shown to be arbitrary and capricious, *to be lacking in good faith* or to otherwise be in violation of the Insurance Article." *Id.* (emphasis added). Further, sub-section nine of § 27-303 defines an "unfair claim settlement practice" as a "fail[ure] to act in good faith, as defined under § 27-1001 of this title, in settling a first-party claim under a policy of property and casualty insurance."[18] § 27-303(9). Accordingly, the MIA expressly considered whether Travelers acted in good faith--as defined in § 27-1001--in denying Carlyle's claim.

---

[16] This provision governs, *inter alia*, the circumstances under which an insurer's certificate of authority may be denied, suspended, or revoked. *See* Md. Code Ann., Ins. § 4-113 (West 2001).

[17] This provision defines "unfair [insurance] claim settlement practice[s]," which include, *inter alia*, "misrepresent[ing] pertinent facts or policy provisions that relate to the claim or coverage at issue" and "fail[ing] to provide promptly on request a reasonable explanation of the basis for a denial of a claim." Md. Code Ann., Ins. § 27-303 (West 2013).

[18] "Good faith" has the same definition under § 27-1001(a) and § 3-1071(a)(4)--"an informed judgment based on honesty and diligence supported by evidence the insurer knew or should have known at the time the insurer made a decision on a claim."

Because Carlyle has exhausted her claim that Travelers failed to act in good faith--and Travelers has not argued any other basis for the amendment's futility--Carlyle's motion for leave to amend will be granted.

III. Conclusion

For the reasons stated above, Carlyle's motion for leave to amend and Travelers's motion to file a surreply will be granted, and Travelers's motion to dismiss will be denied as moot.

_____6/5/14_____     _____/s/_____
Date                   William D. Quarles, Jr.
                       United States District Judge