IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

|  |  |
|---|---|
| CARVET CARLYLE, | * |
| Plaintiff, | * |
| v. | CIVIL NO.: WDQ-13-2964 |
| THE TRAVELERS HOME AND MARINE INSURANCE COMPANY, | * |
| Defendant. | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

MEMORANDUM OPINION

Carvet Carlyle sued The Travelers Home and Marine Insurance Company ("Travelers") in the Circuit Court for Baltimore City for breach of contract. ECF No. 2. Travelers removed to this Court. ECF No. 1. Pending is Travelers's motion for reconsideration of the Court's June 5, 2014 Order denying its motion to dismiss Count II of Carlyle's Second Amended Complaint as moot, and granting Carlyle's motion for leave to file a third amended complaint. ECF No. 38.[1] No hearing is necessary. Local Rule 105.6 (D. Md. 2014). For the following reasons, Travelers's motion for reconsideration will be denied.

---

[1] The Court's Order also granted Travelers's motion for leave to file a surreply. ECF No. 38.

I.    Background[2]

    A.    Facts

Since August 11, 1999, Carlyle[3] has owned a home at 4124 Marx Avenue in Baltimore, Maryland (the "Baltimore home").  ECF No. 36 ¶ 4.  Beginning in 2005, Carlyle rented her home to a tenant.  *Id.* ¶ 7.[4]  On September 25, 2009, Carlyle purchased a homeowner's insurance policy from Travelers for the period of September 25, 2009 through September 25, 2011 (the "Policy").  *Id.* ¶ 5.  Carlyle paid all the premiums due under the Policy.  *Id.* ¶ 6.

In February 2010, Baltimore "experienced a massive, and largely unprecedented, winter snowstorm that deposited between 2 and 3 feet of snow."  *Id.* ¶ 8.  During and after the storm, the Baltimore home sustained damage to the "roof, siding, water

---

[2] The facts are from the third amended complaint, ECF No. 36, and Travelers's motion for leave to file a surreply, ECF No. 33-2. When a party seeks dismissal for lack of subject matter jurisdiction, the court may look "beyond the pleadings" to the submitted evidence to determine if jurisdiction exists.  *Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003) *aff'd,* 85 F. App'x 960 (4th Cir. 2004).

[3] Carlyle suffers from a disabling medical condition that causes her to have occasional seizures and require assistance from a full-time caregiver.  ECF No. 36 ¶ 60.

[4] The amended complaint does not expressly state whether Carlyle shared her home with the tenant. However, that Carlyle has been forced to pay rent elsewhere because--as of March 2010--the home was not "suitable for use as a primary residence" or as a rental property, *id.* ¶¶ 58-59, suggests that Carlyle shared the home with the tenant until March 2010.

pipes, ceilings, walls, floors, fixtures, and personal items"
because of the "extreme weather conditions." *Id.* ¶¶ 9-10. Also
in February 2010, someone broke into the Baltimore home, stole
Carlyle's personal property, and caused more damage to the home.
*Id.* ¶ 11.

On March 1, 2010, Carlyle reported the property damage and
theft to Travelers. *Id.* ¶ 13. Travelers assigned three claim
numbers to Carlyle's report--one to the damaged water pipes; one
to the damaged roof and siding; and one to the burglary. *Id.*
¶¶ 14-16. Each claim had a $1,000 deductible. *See id.* ¶¶ 36,
42. Because the snowstorm damage claims "arose out of the same
occurrence"--and should have been considered one claim--
Travelers improperly obtained two deductibles from Carlyle for
snowstorm-related loss. *See id.* ¶ 36.

Travelers inspected the Baltimore home and initially
concluded that the pipe leaks were unrelated to the snowstorm.
*Id.* ¶ 17. However, Travelers later paid Carlyle $2,365.89[5] for
replacing the pipes; this amount is far less than Carlyle's
multiple third-party estimates of the actual cost of replacing
the pipes. *Id.* ¶¶ 18-20. "Travelers knew or should have known
that no contractor would undertake the repairs for the estimated
cost of repair." *Id.* ¶ 21.

---

[5] Travelers estimated the cost of replacement to be $3,558.37,
from which it subtracted $192.48 in recoverable depreciation and
the $1,000 deductible. ECF No. 36 ¶ 18.

Because Travelers and Carlyle continued to dispute whether other water damage caused by the damaged pipes resulted from the snowstorm, Carlyle "was forced to obtain an independent plumber." *Id.* ¶¶ 22-23.  The plumber concluded that water damage to the basement and other parts of the Baltimore home was attributable to the snowstorm. *Id.* ¶ 23.  This new information prompted Travelers to re-inspect the home. *Id.* ¶ 24.  Although Travelers then recognized that the additional water damage was caused by the snowstorm, it did not increase its payment to Carlyle. *Id.* ¶¶ 24-25.  Instead, Travelers assigned its Special Investigations Unit ("SIU") to extensively investigate Carlyle's "personal affairs to determine whether any exclusion under the terms of the Policy might apply." *Id.* ¶ 25.  The SIU investigation requested "extensive and unreasonable amounts of documentation" from Carlyle, including, *inter alia*, her income tax returns, proof of her income, and disclosure of her bank accounts and creditors. *Id.* ¶ 51.  During the investigation, Travelers also made "offensive and unsubstantiated . . . accusations" about Carlyle, including that she "neglected her property and allowed squatters to reside in her home." *Id.* ¶ 52.

As a result of the delayed repairs to the water damage caused by Travelers's "continued reluctance to provide adequate compensation," mold developed in the Baltimore home. *Id.* ¶ 32.

Although Carlyle reported the "resultant mold growth"--which was covered by the Policy--to Travelers, it did not increase payment to Carlyle and instead assigned the SIU to determine if an exclusion applied. *Id*. ¶¶ 33-35. Since March 2010, because of the mold growth, the Baltimore home has been uninhabitable, forcing Carlyle to lose rental income from her tenant and to move elsewhere and pay monthly rent. *See id*. ¶¶ 58-59.

Travelers also paid Carlyle $3,122.02[6] for the damage to the siding and roof. *Id*. ¶ 26. Carlyle contested Travelers's valuation of the damage, and Travelers issued an additional payment of $1,107.74. *Id*. ¶ 27. Even with this second payment, Travelers's repair estimate was far less than Carlyle's multiple third-party estimates of the cost of repairing the damage to the home. *See id*. ¶¶ 28-29. "Travelers knew or should have known" that Carlyle would not be able to obtain the needed repairs for Travelers's estimated cost of repair. *Id*. ¶ 30.

On March 5, 2010, Carlyle filed a police report about the stolen property. *Id*. ¶ 39. Although Carlyle provided Travelers "numerous photos, lists and receipts to substantiate the loss," Travelers claimed that she had not sufficiently documented her loss. *See id*. ¶¶ 40-41. Travelers eventually paid Carlyle

---

[6] Travelers estimated the cost of replacement to be $4,958.28, from which it subtracted $836.26 in recoverable depreciation and the $1,000 deductible. ECF No. 36 ¶ 18.

$2,236.67 for the missing items and $1,397.20[7] for damage caused by the break-in. *Id.* ¶ 42. These payments were far less than the amount of actual damage and loss, and Carlyle was unable to find a contractor willing to fix the property damage for Travelers's estimated cost of repair. *See id.* ¶¶ 43-45. Travelers "knew or should have known" that these payments were insufficient. *Id.* ¶¶ 46-47.

On May 21, 2012, Travelers issued a final determination letter for Carlyle's snowstorm-related damage claims, which "refused to indemnify [Carlyle] to the full extent of her damages." *Id.* ¶ 54. On November 14, 2012, Carlyle submitted a complaint to the Maryland Insurance Administration ("MIA"), asserting that Travelers had improperly denied coverage. ECF No. 33-2 at 1.[8] On December 4, 2012, Travelers issued a second final determination letter, which "denied full coverage for the February burglary." ECF No. 36 ¶ 55.

---

[7] Travelers estimated the cost of repair to be $2,397.20, from which it subtracted the $1,000 deductible. ECF No. 36 ¶ 42.

[8] The complaint to the MIA addressed all three claims. ECF No. 33-2 at 1. Carlyle contended, *inter alia*, that Travelers was "untruthful with [her] during the claim investigations and settlements." *Id.*

B.   Procedural History

On February 5, 2013, Carlyle, *pro se*, sued Travelers and others[9] in the Circuit Court for Baltimore City.   ECF No. 2.   On April 26, 2013, in response to Travelers's motion for a more definite statement, Carlyle filed an amended complaint.   ECF Nos. 6, 7.   On August 7, 2013, the MIA issued a final determination letter ("MIA Letter") concluding that "Travelers has not violated Maryland insurance law in its handling of [Carlyle's] claims."   ECF No. 33-2 at 1.   The MIA had "focused its review" on § 4-113[10] ("denials, refusals to renew, suspensions, and revocations") and § 27-303[11] ("unfair claim settlement practices") of the Maryland Insurance Article.   *Id.* at 9.[12]

---

[9] Travelers is the only remaining defendant; the other defendants were dismissed before the case was removed to this Court.   ECF No. 24 at 1.

[10] This provision governs the circumstances under which an insurer's certificate of authority may be denied, suspended, or revoked.   *See* Md. Code Ann., Ins. § 4-113 (West 2001).

[11] This provision defines "unfair [insurance] claim settlement practice[s]," which include "misrepresent[ing] pertinent facts or policy provisions that relate to the claim or coverage at issue" and "fail[ing] to provide promptly on request a reasonable explanation of the basis for a denial of a claim." Md. Code Ann., Ins. § 27-303 (West 2014).

[12] Although the MIA Letter only cites sub-sections (1), (2), and (6) of Ins. § 27-303--which do not discuss the good faith requirement--the letter expressly states that "Travelers' actions have not been shown to be arbitrary and capricious, to

7

On September 19, 2013, Carlyle--through counsel--filed a
second amended complaint alleging breach of contract (Count I)
and torts arising from breach of contract (Count II).[13]  ECF No.
18.  On October 8, 2013, Travelers removed to this Court on the
basis of diversity jurisdiction[14] and answered the complaint.
ECF Nos. 1, 21.

On November 13, 2013, Carlyle moved for leave to file a
third amended complaint.  ECF No. 30.  The proposed amended
complaint deletes Count II and supplements Count I with a claim
for attorneys' fees for Travelers's alleged failure to act in
good faith in denying insurance coverage under Md. Code Ann.,
Cts. & Jud. Proc. § 3-1701(e)(2) (West 2007).  *See* ECF No. 30-2
¶¶ 66-79.  On November 18, 2013, Travelers opposed the motion.
ECF No. 31.  On December 3, 2013, Carlyle replied.  ECF No. 32.
On December 11, 2013, Travelers moved unopposed for leave to
file a surreply.  ECF No. 33.  On June 5, 2014, the Court
granted Carlyle's motion for leave to file a third amended
complaint, denied as moot Travelers's motion to dismiss, and

---

be lacking in good faith or to otherwise be in violation of the
Insurance Article."  ECF No. 33-2 at 9.

[13] On October 8, 2013, Travelers moved to dismiss Count II for
failure to state a claim.  ECF No. 22.  Carlyle consented to the
dismissal and has deleted Count II in her proposed third amended
complaint.  ECF No. 28 at 1.  Because the Court will grant
Carlyle leave to file the third amended complaint, *see infra*
Section II.B, the motion to dismiss will be denied as moot.

[14] *See* 28 U.S.C. § 1332(a).

granted Travelers's motion for leave to file a surreply.   ECF
No. 35.

On June 17, 2014, Travelers moved for reconsideration of
the Court's June 5, 2014 Order granting Carlyle's motion for
leave to file a third amended complaint and denying Travelers's
motion to dismiss Count II.   ECF No. 38.   On June 27, 2014,
Carlyle opposed Travelers's motion.   ECF No. 39.

II.   Analysis

A.   Legal Standard for Motion for Reconsideration

Motions for reconsideration of an interlocutory order are
governed by Fed. R. Civ. P. 54(b), under which "any order . . .
may be revised at any time before the entry of a judgment
adjudicating all the claims and all the parties' rights and
liabilities."   Fed. R. Civ. P. 54(b).[15]   Thus, when warranted, a
district court retains the power to reconsider and modify its
interlocutory judgments at any time before final judgment.   *Am.
Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514-15 (4th
Cir. 2003).[16]   Resolution of the motion is "committed to the

---

[15] *See Mateti v. Activus Fin., LLC*, No. DKC-08-0540, 2009 WL
3633339, at *4 (D. Md. Oct. 27, 2009).

[16] "Motions for reconsideration of interlocutory orders are not
subject to the strict standards applicable to motions for
reconsideration of a final judgment."   *Am. Canoe*, 326 F.3d at
514 (*citing* 11 James Wm. Moore et al., *Moore's Federal Practice*
§ 56.04[3] (3d ed.) ("Rule 60(b) does not govern relief from
interlocutory orders . . . .")); *see also Fayetteville Investors
v. Commercial Builders, Inc.*, 936 F.2d 1462, 1469 (4th Cir.

discretion of the district court," *id.* at 515, and "the goal is
to reach the correct judgment under law." *Netscape Commc'n
Corp. v. ValueClick, Inc.*, 704 F. Supp. 2d 544, 547 (E.D. Va.
2010) (internal citations omitted).

    B.   Travelers's Motion

    Travelers argues that the Court committed clear error when
it granted Carlyle's motion for leave to file a third amended
complaint, permitting her to add a claim for attorney's fees
under Md. Code Ann., Cts. & Jud. Proc. ("CJP") § 3-1701, because
"she has not exhausted her administrative remedies." ECF No. 38
¶¶ 1-2.[17] Specifically, Travelers argues that Carlyle cannot
file a complaint alleging failure to act in good faith under CJP
§ 3-1701 because she has not obtained a final decision from the
MIA under § 27-1001[18] of the Insurance Article. *Id.* at 4-6.
According to Travelers, because Carlyle filed a complaint with
the MIA under Ins. § 27-303--and not under Ins. § 27-1001-- she
has failed to exhaust her administrative remedies. *Id.*

    Section 3-1701 authorizes recovery from insurers for actual
damages and "[e]xpenses and litigation costs . . . including

---

1991) ("An interlocutory order is subject to reconsideration at
any time prior to the entry of a final judgment.").

[17] According to Travelers, "[b]ecause the Third Amended Complaint
should be stricken, the Second Amended Complaint controls," and,
thus, the Court should reconsider the motion to dismiss Count II
of the Second Amended Complaint. ECF No. 38 ¶ 8.

[18] Md. Code Ann., Ins. § 27-1001 (West 2007).

reasonable attorney's fees" if an insured prevails on a claim of improper denial of coverage, and the "insurer failed to act in good faith" in declining payment.  *See* § 3-1701(a)(4), (e); *Thompson v. State Farm Mut. Auto. Ins. Co.*, 9 A.3d 112, 114 (2010).  To bring an action under this statute, the insured must comply with the exhaustion provisions of Ins. § 27-1001.[19] Section 27-1001(d)(1) states that a "complaint stating a cause of action under § 3-1701 of the Courts Article shall first be filed with the MIA."  The complaint must "specify the applicable insurance coverage[,] the amount of the claim under the applicable coverage[,] the amount of actual damages, and the claim[ed] expenses and litigation costs."  Ins. § 27-1001(d)(2).[20]

A court's discretion to review an interlocutory order is "not subject to the strict standards applicable to motions for

---

[19] Section 27-1001 "applies only to actions under § 3-1701." Ins. § 27-1001(b).

[20] Under section 27-1001(c)(2), the exhaustion requirement does not apply to an action:

> (i) within the small claim jurisdiction of the District Court under § 4-405 of the Courts Article; (ii) if the insured and the insurer agree to waive the requirement under paragraph (1) of this subsection; or (iii) under a commercial insurance policy on a claim with respect to which the applicable limit of liability exceeds $1,000,000.

Ins. § 27-1001(c)(2)(i)-(iii).

reconsideration of a final judgment,"[21] but is "within the
plenary power of the Court . . . to afford such relief . . . as
justice requires."[22]   Although Rules 59(e)[23] and 60(b)[24] do not
govern reconsideration of an interlocutory order, the Fourth
Circuit has suggested that at least parts of those rules may
guide a court's analysis.[25]   In considering whether to revise

---

[21] *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514 (4th
Cir. 2003).

[22] *Fayetteville Investors*, 936 F.2d at 1473 (internal citation
and quotation marks omitted).

[23] Under Rule 59(e), a motion to alter or amend a final judgment
may be granted only "(1) to accommodate an intervening change in
controlling law; (2) to account for new evidence not available
at trial; or (3) to correct a clear error of law or prevent
manifest injustice." *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*,
148 F.3d 396, 403 (4th Cir. 1998).

[24] Under Rule 60(b), a court may grant relief from a judgment or
order for: (1) mistake, inadvertence, surprise, or excusable
neglect; (2) newly discovered evidence; (3) fraud or misconduct
by the opposing party; (4) voidness; (5) satisfaction; or (6)
any other reason that justifies relief.   Fed. R. Civ. P. 60(b).

[25] *See Fayetteville Investors*, 936 F.2d at 1470, 1472 (declining
to "thoroughly express our views on the interplay of Rules 60,
59, and 54" but citing *Gridley v. Cleveland Pneumatic Co.*, 127
F.R.D. 102 (M.D. Pa. 1989), in which Rule 60(b) guided the
court's reconsideration of an interlocutory order); *Pritchard v.
Wal-Mart Stores, Inc.*, 3 F. App'x 52, 53 (4th Cir. 2001) (per
curiam) (citing an earlier case applying Rule 60(b) to hold that
a district court did not err in denying a motion to reconsider
an interlocutory order); *see also Superior Bank, F.S.B. v.
Tandem Nat'l Mortg., Inc.*, 197 F. Supp. 2d 298, 332-39 (D. Md.
2000) (guided by Rules 59(e) and 60(b), court declined to amend
interlocutory order because movant had presented no new facts
and had failed to show that other cases dictated a different
result).

interlocutory decisions, district courts in this Circuit have
looked to whether movants presented new arguments[26] or evidence,[27]
or whether the court has "obviously misapprehended a party's
position or the facts or applicable law."[28]

The Court's June 5, 2014 Memorandum Opinion concluded that
Carlyle had exhausted her administrative remedies because "the
MIA expressly considered whether Travelers acted in good faith--
as defined in § 27-1001--in denying Carlyle's claim."  ECF No.
34 at 12.  In reviewing Carlyle's claims for unfair settlement
practices under Ins. § 27-303, the MIA concluded that
"Travelers' actions have not been shown to be arbitrary and
capricious, *to be lacking in good faith* or to otherwise be in
violation of the Insurance Article."  ECF No. 33-2 at 9
(emphasis added).  Sub-section nine of § 27-303 defines an
"unfair claim settlement practice" as a "fail[ure] to act in
good faith, as defined under § 27-1001 of this title, in
settling a first-party claim under a policy of property and

---

[26] *See, e.g.*, *McLaurin v. E. Jordan Iron Works, Inc.*, 666 F.
Supp. 2d 590, 596 (E.D.N.C. 2009) ("Generally, motions to
reconsider are not appropriate vehicles to advance arguments
already rejected by the Court or new legal theories not argued
before the ruling.") (internal quotation marks omitted), *aff'd*,
410 F. App'x 630 (4th Cir. 2011).

[27] *United States v. Duke Energy Corp.*, 218 F.R.D. 468, 474
(M.D.N.C. 2003).

[28] *Duke Energy Corp.*, 218 F.R.D. at 474 (internal quotation marks
omitted).

casualty insurance."   Ins. § 27-303(9).   Section 27-1001

defines "good faith" as "an informed judgment based on *honesty*

and diligence supported by evidence the insurer knew or should

have known at the time the insurer made a decision on a claim."

Ins. § 27-1001(a)(emphasis added).[29]

Though Travelers contends that Carlyle's MIA complaint

never asserted that it had failed to act in good faith, ECF No.

38-1 at 7, Carlyle's MIA complaint contended that Travelers was

"untruthful with [her] during the claim investigations and

settlements," ECF No. 33-2 at 1.   Section 27-1001 requires the

insured to file a complaint before the MIA that describes the

insurance coverage and the amounts of the claim and damages; "it

requires nothing more."   *Fakhoury v. Great N. Ins. Co.*, No. CIV.

WDQ-12-0268, 2012 WL 1554487, at *3-*4 (D. Md. Apr. 30,

2012)(*citing* Ins. § 27-1001(d)(2)).   Carlyle's assertion of bad

faith--by way of reference to Travelers's alleged dishonesty--

and the MIA's explicit consideration of whether Travelers failed

to act in good faith, are sufficient to find that Carlyle has

adequately exhausted her administrative remedies.[30]   Accordingly,

---

[29]   "Good faith" has the same definition under § 27-1001(a) and
§ 3-1071(a)(4).

[30] *See Fakhoury*, CIV. No. WDQ-12-0268, 2012 WL 1554487, at *4
("The Fakhourys satisfied § 27-1001 by filing a complaint that
challenged GNI's good faith, and noted the applicable coverage,
amount of the claim, amount of actual damages, and sought
expenses and litigation costs.")(footnote omitted).

the Court did not "obviously misapprehend[] . . . the . . .
applicable law"[31] when it concluded that Carlyle had exhausted
her administrative remedies.[32]

III. Conclusion

For the reasons stated above, Travelers's motion for
reconsideration will be denied.


_____                    _____
Date   11/19/14                            William D. Quarles, Jr.
                                           United States District Judge

[31] *Duke Energy Corp.*, 218 F.R.D. at 474 (internal quotation marks
omitted).

[32] *See McLaurin*, 666 F. Supp. 2d at 596 ("Generally, motions to
reconsider are not appropriate vehicles to advance arguments
already rejected by the Court . . . .") (internal quotation
marks omitted)), *aff'd*, 410 F. App'x 630 (4th Cir. 2011).